ROWE, J.
X.G. appeals the trial court’s denial of his motion for continuance and the trial court’s order placing him in a moderate-risk commitment program. We affirm the trial court’s denial of the motion for continuance without further discussion. But we *91 reverse the trial court’s order committing X.G. to a moderate-risk program. See C.M.H. v. State, 25 So.3d 678, 680 (Fla. 1st DCA 2010).
X.G. was tried and found guilty of two counts of battery upon a school employee. The Department of Juvenile Justice (DJJ) initially recommended that X.G. be committed to a moderate-risk residential program. Fourteen days later, DJJ amended its predisposition report to recommend that X.G. be placed on supervised probation. After conducting the final disposition hearing, the trial court deviated from DJJ’s amended recommendation and committed X.G. to a moderate-risk program.
X.G. argues that in deviating from DJJ’s recommendation, the trial court failed to engage in the appropriate level of analysis as set forth in E.A.R. v. State, 4 So.3d 614, 638 (Fla.2009). Although the trial court in this case found that DJJ failed to provide “any rational explanation” regarding the change in its recommended disposition, specifically referred to the child’s violent behavior, the threat posed to “the employees at [his] school” or “any school” and found based on the totality of the circumstances that “a moderate-risk placement would serve the needs of both the child and the community,” these findings fall short of the scrupulous analysis required under E.A.R. See C.M.H. v. State, 25 So.3d 678, 680 (Fla. 1st DCA 2010). As this court recognized in M.H. v. State, 69 So.3d 325, 328 (Fla. 1st DCA 2011), E.A.R. requires the trial court to perform a rigorous and detailed analysis when deviating from DJJ’s recommendation:
[I]t is important for trial courts to understand that deviating from a DJJ’s recommendation is a difficult matter pursuant to the dictates of EAR. In order to deviate lawfully, a trial court must do more than place generalized reasons on the record; it must engage in a well-reasoned and complete analysis of the PDR and the type of facility to which the trial court intends to send the child. This is no easy task and will take time and consideration.
Based on the strict requirements of E.A.R., we are constrained to reverse and remand. As in C.M.H. v. State, 25 So.3d 678, 680 (Fla. 1st DCA 2010); M.J.S. v. State, 6 So.3d 1268, 1270 (Fla. 1st DCA 2009); and M.K. v. State, 4 So.3d 1271, 1273 (Fla. 1st DCA 2009), on remand, the trial court shall articulate on the record an understanding of the opposing restrictiveness levels or the divergent treatment programs and services available to the juveniles at these levels and why a moderate-risk commitment was better suited to serving the rehabilitative needs of X.G. as required by the supreme court’s holding in E.A.R.
REVERSED AND REMANDED.
BENTON, C.J., and RAY, J., concur.